[L. A. No. 12699.   In Bank.—March 7, 1932.]

In the Matter of the Estate of EDNA SAYLES, Deceased. CHARLES SHOREY, Appellant, v. LEON SAYLES et al., Respondents.

David M. Burnett, John M. Burnett, and Joseph F. Rank for Appellant.

C. W. Stahl for Respondents.

WASTE, C. J.—The last will and testament of Edna Sayles, deceased, was admitted to probate on December 17,

1929, and letters testamentary issued thereon. She left surviving her neither issue, husband, father, mother, full brother or sister, nor the issue thereof, but left two half-brothers and two half-sisters and their children. By the terms of her will she disposed of all her property to certain named persons, among them the half brothers and sisters and their children. Claiming to be a cousin of the decedent and an inheritable heir, the appellant filed his contest of the will, alleging want of due execution and incapacity of the decedent to execute such an instrument. In his petition of contest the appellant also alleges that all of the property of which the decedent died seised came to her by descent and devise, and that a proper construction of section 254 of the Probate Code (formerly sec. 1394 of the Civ. Code) would exclude her half brothers and sisters from inheriting any portion of the estate, causing it to thus fall to the contestant as a cousin german. The proponents of the will demurred to this petition, urging that the appellant was not an inheritable heir of the decedent under the laws of succession, and therefore was not a person "interested" within the meaning of section 370 of the Probate Code (formerly sec. 1307 of the Code of Civ. Proc.). This demurrer was sustained, and subsequently a motion to dismiss, based on the same grounds, was granted. From the orders sustaining the demurrer and granting the motion to dismiss, the contestant has appealed.

The appeal turns upon the construction to be given section 254 of the Probate Code, which reads as follows:

"Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are."

The clause "in favor of those who are" was added in 1931. (Stats. 1931, p. 587.) This clause need not concern us, however, for it merely added that which the courts had already read into the section, as will more fully hereinafter appear.

It is the appellant's contention that the second clause of the section, the portion following the word "unless", applies to *all* cases wherein next of kin of the half blood claim property which has come to a decedent from an ancestor not of

the blood of the claimants and that its effect is to exclude such kindred from the inheritance, in favor of those of the whole blood who are of the blood of the ancestor. In other words, the appellant urges that "where the property of the decedent was of ancestral origin, and the relatives of the half blood were not of the blood of the ancestor, those relatives of the half blood should be excluded in favor of relatives of the full blood who were of the blood of the ancestor". Respondents' position is that the second clause is operative only when there are kindred of the whole blood *"in the same degree"* as the kindred of the half blood and that kindred of the half blood inherit ancestral property in preference to those of the whole blood of more remote degree. This section was construed adversely to the appellant's contention in *Estate of Smith,* 131 Cal. 433 [82 Am. St. Rep. 358, 63 Pac. 729], and in *Estate of Belshaw,* 190 Cal. 278 [212 Pac. 13]. Appellant would have us overrule these decisions. In *Estate of Belshaw, supra,* as here, the appellant argued that the code section had been erroneously construed in the *Estate of Smith, supra,* that at best the holding in the *Estate of Smith* upon this particular point was but *obiter dictum;* that said holding is opposed to the weight of authority; and that the second clause of the section should be so construed as to exclude kindred of the half blood in favor of those of the whole blood in any degree when the property was of ancestral origin and the kindred of the half blood, as distinguished from those of the whole blood, were not of the blood of the ancestor.

After maturely considering each of these points, the opinion in *Estate of Belshaw,* following the decision in *Estate of Smith,* advisedly concludes that the last clause of the quoted code section constitutes but an "exception" to the rule announced in the first clause thereof and that said second clause is therefore operative *only* when there are kindred of the whole blood who are of the blood of the ancestor and "in the same degree" as those of the half blood. In other words, as construed in the *Estate of Belshaw,* kindred of the half blood, under the first clause of the section, inherit equally with those of the whole blood *"in the same degree"*, while under the second or last clause of the section, if the property be of ancestral origin, the kindred of the half blood, not of the blood of the ancestor, are

excluded only in favor of those of the whole blood "*in the same degree*", providing, of course, that those of the whole blood are also of the blood of the ancestor.

The construction of the section announced in the *Estate of Belshaw* and in the *Estate of Smith*, is a reasonable one and we see no reason for now overruling those cases, or departing from their interpretation of the statute.

There is nothing in the *Estate of Edwards*, 202 Cal. 130 [259 Pac. 440], that in any way suggests a construction of the code section differing from that announced in the earlier cases. As a matter of fact, the opinion in the former case cites with approval the decision in the *Estate of Belshaw* and in the *Estate of Smith. Estate of Edwards* presented an entirely dissimilar situation and the language quoted therefrom by the appellant was employed merely to show that the clause excluding kindred of the half blood from inheriting ancestral property, as construed in the Smith and Belshaw cases, can have application only when there are kindred of the whole blood (in the same degree) who are "*also of the blood of the ancestor*". No attempt was made in *Estate of Edwards* to construe or define the full meaning of the code section, for the heirs of the whole blood in that case were not of the blood of the "ancestor" and, therefore, under the terms of the statute, as construed by the earlier decisions, they could not possibly fall within the category of heirs in whose favor the exclusion clause was intended to apply. For this reason alone the statute was dismissed from consideration in that case.

Nor do we think that the *Estate of Edwards* contains any language reasonably tending to indicate that the holding in the *Estate of Smith* was *obiter dictum*. As stated in *Estate of Belshaw, supra,* page 282, it was necessary in *Estate of Smith* "to determine whether section 1394 excluded all kindred of the half blood not of the blood of the ancestor from inheriting ancestral property, for if such were its effect, the half-sisters of the decedent in that case would have received nothing, notwithstanding they were within a class mentioned in section 1386, as entitled to inherit. In order to decide whether or not it had such an effect, the court was required to interpret the section in order to determine whether it applied in that case." We were not confronted with this problem in the *Estate of Edwards* for the law had long prior

thereto been crystallized by the construction placed upon the statute in the *Estate of Smith* and the *Estate of Belshaw*. It having been determined in those cases that the heirs of the half blood not of the blood of the ancestor were to be excluded *only* in favor of heirs of the whole blood "in the same degree" who were also of the blood of the ancestor, it was quite natural in the *Estate of Edwards* that we declare the statute to be inapplicable to a situation not presenting the prerequisites set down in the two prior decisions. By no distortion of the language used can this be said to be the equivalent of, or tantamount to, a declaration that the decision in the *Estate of Smith* was *obiter dictum*. Being without a guide in the matter, it was necessary, in the *Estate of Smith*, as distinguished from the *Estate of Edwards*, to determine the full effect and scope of the statute.

All of the arguments and contentions advanced by the appellant in the present case as suggesting an interpretation of the statute differing from that announced in the *Estate of Smith* and in the *Estate of Belshaw* are sufficiently answered by the opinion in the latter case. We therefore find it unnecessary to further extend this opinion.

The orders appealed from are, and each is, affirmed.

Langdon, J., Preston, J., Curtis, J., Shenk, J., and Seawell, J., concurred.