[L. A. No. 3771. In Bank.—August 10, 1915.]

## In the Matter of the Estate of WILLIAM BRADY, Deceased.

ESTATE OF DECEASED PERSON—COMMUNITY PROPERTY—FINDING.—
Where at the time of the death of a predeceased wife of a decedent there was certain community property of the spouses and after the death of the wife the husband sold the property and reinvested it in stocks and bonds, a finding that all of the latter property "consisted of rents, issues and profits of the community property owned by" the decedent and his wife "at the time of the death of the latter, and of property purchased with moneys derived from the sale of said community property" precludes the idea that any part of the increase in value of said property was other than that which had arisen naturally, and without the active engagement by the husband of his capital in some business or employment, from the common property existing at the time of death of the predeceased spouse, or that any part of said increase was due to the personal activity, ability, or capacity of the surviving husband.

ID.—CONSTRUCTION OF SUBDIVISION 8 OF SECTION 1386, CIVIL CODE.—The apparent object of subdivision 8 of section 1386 of the Civil Code, where both spouses die without lineal descendants, is to provide for the inheritance of the community property of the parties equally by the respective families of the two spouses by whose efforts it was accumulated, and the subdivision applies not only to community property in kind, as it existed at the death of the predeceased spouse, but also to that into which the surviving spouse may have converted it during his or her subsequent life, and also to the rents, issues, and profits thereof.

ID.—SECTION 1401, CIVIL CODE—RIGHT OF HUSBAND TO COMMUNITY PROPERTY—SECTION 1386 APPLICABLE IN CASE OF INTESTACY.—The provision of section 1401 of the Civil Code, that upon the death of the wife, the entire community property, without administration, belongs to the surviving husband, is entirely immaterial in determining the proper construction of the rule of succession

CLXXI Cal.—1

prescribed by subdivision 8 of section 1386 of the Civil Code, whether the property remains in its original form or is exchanged by the surviving spouse for other property, for in either case the property is the absolute property of the surviving husband during his life to do with as he wills, and the latter section merely enacts a rule of succession in regard thereto in the event of his dying intestate; and it is a reasonable construction of subdivision 8 of section 1386 to hold that the words "common property of such decedent and his or her deceased spouse, while such spouse was living," include such proceeds and rents, issues and profits of· the community property existing at the time of the death of the predeceased spouse as would have constituted community property if the marriage had not been dissolved by the death of the latter.

APPEAL from a decree of the Superior Court of Los Angeles County distributing the estate of a deceased person. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, George Beebe, Deputy Attorney-General, and John T. Nourse, Deputy Attorney-General, for Appellant.

Henry T. Gage, W. I. Foley, O'Melveny, Stevens & Millikin, J. Wiseman Macdonald, Haas & Dunnigan, Hunsaker & Britt, and Lewinsohn & Kline, *Amici Curiae*, for Appellant.

Mott & Dillon, for Public Administrator.

Oscar Lawler, and Porter & Sutton, for Respondents.

ANGELLOTTI, C. J.—This is an appeal by the state of California from the portion of the decree of final distribution of the estate of William Brady, deceased, which adjudges that one-half of the property of said deceased be distributed to certain persons bearing the relationship of brother or sister, or descendants of such, to Harriet Hayes Brady, the predeceased wife of said William Brady. The other half of said property was distributed to the state of California, subject to the provisions of title VIII, part III, of the Code of Civil Procedure, and all other provisions of the statutes of the state relative to the escheat of estates. It is claimed on behalf of the state that, upon the facts, *all* of the property should have been so distributed to the state, said William Brady having left

surviving him no kin whatsoever. This claim concededly is well founded, unless the disposition of the property is controlled by subdivision 8 of section 1386 of the Civil Code. The lower court treated all of the property of deceased as being controlled in its devolution by said subdivision 8 of section 1386, and distributed it accordingly.

There can be no dispute on this appeal as to the material facts. The findings of the lower court declare those facts, and these findings are conclusive for all the purposes of the appeal, the evidence not having been brought before us for review. Mrs. Brady, the predeceased wife of deceased, died July 22, 1894. At the time of her death there was certain property, consisting of two parcels of land, two notes secured by mortgage, and certain money, of the aggregate value of $20,238.50, which was community property of Mr. Brady and his said wife, all of the same having been acquired by them during their marriage, and none of the same having been acquired by gift, bequest, devise, or descent. Mr. Brady died intestate on October 28, 1909. In the meantime he had sold the land and collected the amounts due on the notes, and had reinvested the proceeds in stocks and bonds. He left an estate exceeding in value seventy thousand dollars, all of which "consisted of rents, issues and profits of the community property owned by" him and his said wife "at the time of the death of the latter, and of property purchased with moneys derived from the sale of said community property and the satisfaction of said mortgages." This finding precludes the idea that any part of the increase in value of said property was other than that which had "arisen naturally and without the active engagement by the husband of his capital in some business or employment" (*Estate of Cudworth*, 133 Cal. 462, [65 Pac. 1041]) from the common property existing at the time of death of the predeceased spouse, that any part of said increase was due to the personal activity, ability, or capacity of the surviving husband. (*Pereira* v. *Pereira*, 156 Cal. 1, [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488]; *Estate of Gold*, 170 Cal. 621, [151 Pac. 12.].)

Subdivision 8 of section 1386 of the Civil Code, the section prescribing, in nine subdivisions, rules of succession, is, so far as material, as follows:

"8. If the deceased is a widow, or widower, and leaves no issue, and the estate, or any portion thereof, was common

property of such decedent and his or her deceased spouse, while such spouse was living, such property goes in equal shares to the children of such deceased spouse and to the descendants of such children by right of representation, and if none, then one-half of such common property goes to the father and mother of such decedent in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such decedent and to the descendants of any deceased brother or sister by right of representation, and the other half goes to the father and mother of such deceased spouse in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such deceased spouse and to the descendants of any deceased brother or sister by right of representation.''

The principal claim of the attorney-general and of *amici curiae* who have filed briefs herein, is that none of the property left by Mr. Brady was ''common property'' of Mr. and Mrs. Brady at the time of the death of Mrs. Brady, and that consequently said subdivision 8 is not applicable to the facts of this case. The section is applicable only to such property left by a deceased as was ''common property of such decedent and his or her deceased spouse while such spouse was living,'' and this has been held to mean only such property as was common property at the moment of the death of the predeceased spouse. (*Estate of McCauley,* 138 Cal. 546, [71 Pac. 458].) The theory underlying this claim is that the statute by its very terms includes only the *identical* property held as common property at the time of the death of the predeceased spouse, does not include other property for which the same may have been exchanged, and in no event includes the rents, issues, or profits of such property or of the property into which it has been converted.

In the opinion filed when this case was decided in Department, prepared by Mr. Justice Shaw, it was said in regard to this claim:

''It must have been foreseen by the legislature that many years would usually elapse between the deaths of the respective spouses. The apparent object of subdivision 8, where both spouses die without lineal descendants, is to provide for the inheritance of the property equally by the respective families of the two spouses by whose efforts it was accumu-

lated. The construction contended for would defeat the main object of the subdivision in every case where the property was sold or exchanged by the survivor in his lifetime, and in all cases with regard to the ordinary income or increase thereof. It is a familiar doctrine in this state that property does not lose its character or *status* as separate or community property, by a mere change in form or identity, because of a substitution of other property in the usual manner of sale or exchange, and that interest, rents, or profits therefrom retain the character in this respect of the property from which they are derived. (*Ramsdell* v. *Fuller,* 28 Cal. 42, [87 Am. Dec. 103] ; *Schuyler* v. *Broughton,* 70 Cal. 282, [11 Pac. 719] ; *Rich* v. *Tubbs,* 41 Cal. 34; *Beaudry* v. *Felch,* 47 Cal. 185; *Flournoy* v. *Flournoy,* 86 Cal. 293, [21 Am. St. Rep. 391, 24 Pac. 1012].)

"In view of these considerations, we think the more reasonable conclusion is that the subdivision applies not only to the community property in kind, as it existed at the death of the wife, but also to that into which the husband may convert it during his subsequent life, and that it also applies to the rents, issues, and profits thereof. This was the effect of the decision in *Estate of Davidson,* 21 Cal. App. 118, [131 Pac. 67], in which case this court denied a petition for rehearing. A part of the estate there involved was the proceeds of the property derived by the wife from the predeceased husband. It is a precedent for the conclusion above stated, although the point was not expressly mentioned.

"It does not follow from this conclusion that the heirs of the predeceased wife have anything more than an expectancy in the property, or its proceeds, during the subsequent life of the husband. It does not affect the husband's title. It may also be conceded that if such community property is by the husband so mingled with his other property that it cannot be traced to its origin as a part of the community property, subdivision 8 could not be applied. We have no such difficulty in this case. The property has been traced and the fact is established that it is the proceeds, issues, rents, and profits of the identical property existing at the wife's death."

A rehearing in Bank was granted upon the urgent petition of the attorney-general and various *amici curiae* for the purpose of giving further consideration to the question. While its determination is not entirely easy, we are of the opinion

that what was said on the former decision correctly disposes of the question.

As is stated therein, this conclusion in no way affects the husband's title during his life. Under section 1401 of the Civil Code, providing that "upon the death of the wife, the entire community property, without administration, belongs to the surviving husband," Mr. Brady, as is claimed by appellant, was, without administration, from the moment of the death of his predeceased wife, the absolute owner of all the community property (*Estate of Klumpke,* 167 Cal. 414, 419, [139 Pac. 1062].), as fully as though it had been his separate property during coverture, with power to deal with it as he saw fit, even to the extent of effectually devising or bequeathing it by will, subdivision 8 of section 1386 of the Civil Code applying only in the event of intestacy. This, however, is entirely immaterial in determining the proper construction of the rule of succession prescribed by subdivision 8 of section 1386 of the Civil Code. The situation is the same in this regard whether the property remain in its original form, or is exchanged by the surviving spouse for other property. In each case we are dealing with property which during the life of the surviving husband was his absolute property, to do with as he wills. The legislature has simply enacted a rule of succession in regard thereto in the event of his dying intestate, as it unquestionably had the right to do, and we are simply required to determine what the legislature meant by the language it has used. It is necessarily true also, as contended by appellant, that the community ended with the death of the predeceased spouse, and that property thereafter acquired by the surviving husband could not be community property. But, in view of the findings, we are not dealing here with property *acquired by the surviving husband,* but with property owned by such husband at the time of his death, the acquirement of no part of which was due to his personal activity, ability, or capacity, all of the same coming to him under such circumstances that it would have to be held to be, in view of our statutory provisions and decisions relative to separate and community property, the *same property* that was owned by him and his predeceased spouse at the time of her death, as community property, and the natural increase thereof. In view of these statutory provisions and decisions, it is not a forced or unreasonable construction of the words "common

property of such decedent and his or her deceased spouse, while such spouse was living'' in subdivision 8 of section 1386 of the Civil Code,. to hold that the term includes such proceeds and rents, issues, and profits of the community property existing at the time of the death of the predeceased spouse as would have constituted community property if the marriage had not been dissolved by the death of the predeceased spouse, and this, to our minds, is the natural and reasonable construction of the term. In other words, *purely for the purpose of determining rights by succession upon the death of the surviving spouse,* the statutory provisions determining what is community property as construed by our decisions remain in force and applicable throughout the life of the surviving spouse, as to all *property constituting community property of* the spouses at the time of the death of the predeceased spouse. We are to be understood always as referring only to such proceeds and increase as are not due to the personal activity, ability, or capacity of the surviving spouse, these clearly not being included in such term, but in view of the findings, no part of the property here in dispute comes within this category.

Certain cases from other states are cited by appellant in support of its position that the statutory provision applicable here applies only to the ''identical property'' constituting common property at the death of the predeceased spouse, and does not include property received by the surviving spouse in exchange therefor, or any rents, issues, or profits. Of these decisions it is to be said that none involved the precise question we have here, in view of our community and separate property system and the well-settled rules in regard thereto. It is in the light of the well-understood policy in this matter that our statute is to be construed, and so construed we think the conclusion of the court in Department was correct.

We find in the briefs no other matter requiring notice here. To our minds the decree was in accord with our law and should be affirmed.

The decree of distribution is affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Lawlor, J., concurred.