[Civ. No. 5810. First Appellate District, Division Two.—June 9, 1927.]

WILLIAM GEORGE et al., Respondents, v. FLORENCE SMART DALY, Appellant.

[1] HUSBAND AND WIFE—TRUSTS—BANK DEPOSIT—EVIDENCE.—In this action by the executors of the estate of a deceased person to recover money on deposit in a savings bank claimed by the wife of deceased, the evidence which showed that the husband opened the account jointly with his wife was sufficient to clearly establish a trust in favor of the wife.

[2] ID.—GIFTS—EVIDENCE—FINDINGS.—In such action, the evidence was sufficient to warrant a finding of a valid gift of the bank account to the wife.

(1) 39 Cyc., p. 85, n. 74.   (2) 30 C. J., p. 704, n. 74.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

Joseph T. O'Connor, Alexander McCulloch and Cross & Brandt for Appellant.

Karl C. Partridge, Edward F. Treadwell and Cullinan & Hickey for Respondents.

STURTEVANT, J.—During his lifetime John D. Daly, deceased, opened a savings account in the Daly City Bank. After his death the executors of his will commenced an action against the bank and Florence S. Daly, the surviving widow of the deceased, to recover the amount then on deposit together with interest. Mrs. Daly appeared and filed

1. Deposit of funds belonging to depositor in bank account in name of himself and another as creating a trust, notes, 12 Ann. Cas. 167; 12 L. R. A. (N. S.) 355; 48 A. L. R. 202. See, also, 4 Cal. Jur. 202; 3 R. C. L. 715.

2. Joint deposit as constituting a gift, notes, Ann. Cas. 1916D, 520; 12 L. R. A. (N. S.) 355; 48 A. L. R. 189. See, also, 4 Cal. Jur. 200; 3 R. C. L. 714; 12 R. C. L. 918.

an answer and cross-complaint claiming the deposit as her own. The plaintiffs answered the cross-complaint and a trial was had before the court sitting without a jury. The trial court made findings in favor of the plaintiffs and from a judgment entered thereon Mrs. Daly has appealed and has brought up a bill of exceptions.

The appellant contended in the trial court, and now contends, that the facts show that the deposit was (1) a gift to her; and (2) a trust in her favor as the sole beneficiary. The pertinent evidence is brief and is uncontradicted.

Among other things Mrs. Daly testified that she and John D. Daly were married about 1919. At that time Mr. Daly was a widower, the owner of a considerable sized estate and about seventy-seven years of age. There were then living a son and four daughters, all adults, and the offspring of the first marriage. Mrs. Daly at the time of her marriage was thirty-five years of age, resided at 1884 San Jose Avenue, San Francisco, and was the owner of the premises. She and her sister were the joint owners of a considerable sized estate which was not producing very much of an income, and she was engaged in teaching music to pupils in her own home. Before their marriage Mr. and Mrs. Daly discussed the location of their future home. It was the desire of Mrs. Daly that the husband should come and jointly occupy her house as a home. On the other hand Mr. Daly was reluctant to do so and declared a husband should provide a home for his wife. After the marriage Mr. Daly went to live at Mrs. Daly's home. The accounts for the upkeep of the home were paid by Mr. Daly and they continued to occupy the same residence until his death. Mr. Daly had a commercial bank account in the Crocker Bank, and he also had a commercial account in the Daly City Bank, at which institution he was a large stockholder and the president. Both accounts were his separate property. They had a safe deposit box in the Daly City Bank, and to that box Mr. Daly and Mrs. Daly each had a key. The bank-book, herein discussed, was in the box at the time of Mr. Daly's death. About three years after they were married Mr. Daly said that he wished his wife would go up to the bank, that he wished to open an account for her—for her little home. That was not the first time he

referred to the subject of home. They discussed the subject several times. Nobody else was present on those occasions. He said that he felt that every husband should provide a home for his wife; however, as Mrs. Daly's interests were at her residence he went to her home to live. When he asked her to go to the bank the two of them went up to open the account. Mr. McArthur was the cashier at the window. Mr. Daly went to that window and said to Mr. McArthur: "I wish to open an account for my wife." The cashier prepared a book and a card. Mrs. Daly insisted that Mr. Daly's name should also appear on the account. Mr. Daly drew a check on his commercial account in the same bank for the sum of five thousand dollars. This was on November 23, 1921. The cashier entered the deposit in the savings account book and handed the book to Mr. Daly. Mrs. Daly and Mr. Daly signed the deposit card. The book was marked, "Savings Deposits No. 1032, Daly City Bank, in account with John D. Daly or Florence Smart Daly." The following instruction was set forth in the pass-book: "To Withdraw Money. Payments will in no case be made by the bank except the pass-book be produced and the amount entered therein, and only on the written order of the depositor, or his or her legal representative." Immediately after Mr. Daly had received the book he gave it to Mrs. Daly, saying: "This is your little home." She took it home and kept it in a drawer until Mr. Daly asked for it to make a second deposit. That deposit was in the sum of four thousand dollars and was made on August 24, 1922. When she delivered him the book he took it to the bank and made the second deposit but did not return the book to his wife. He told her that he had left it in their safe deposit box, as he thought it was a safer place than it would be in his pocket, as he was "going down the road." On that particular day he "was going down the road" with a friend. After the first deposit had been made, but the exact date does not appear, Mr. Daly stated to his wife that in case anything happened to him she was immediately to go and draw the money so she would in no way be embarrassed for funds.

Mr. McArthur, the cashier named above, was called as a witness by the plaintiffs and was called as a witness by the defendant. Among other things, he testified that each

deposit was moneys drawn by Mr. Daly from his commercial account and put in the savings account. Among other things he testified: "I recall the occasion on or about the 23rd day of November, 1921, when Mr. Daly opened up the account in question. Mrs. Daly was with him at that time. Mr. Daly stepped up to my window and said he wished to open an account for his wife. I got the necessary papers out and he signed the signature card and I made the entry in his book and he handed me a check on the commercial department of the bank; he also at the same time said he wished his name placed on the book and he signed and Mrs. Daly stepped up to the window and she signed and I made an entry on the book, 'John D. Daly or Florence Smart Daly.' There was no other conversation. . . . There was no discussion at all as to his plans of any kind or his wishes. That was his wish; that he wanted the account made out for his wife. He did not discuss this account with me at any subsequent occasion. When he made the second deposit of $4,000 nothing was said. I had no discussions with Mr. Daly about the account. When he made the second deposit of $4,000 nothing was said, except how he wanted it deposited. The book was handed in with the check."

The foregoing evidence is uncontradicted. Mr. Daly committed no act and made no declaration at any time which in any way further explained or modified the transaction either in the presence of, or in the absence of, Mrs. Daly or the officers of the bank, or any other person.

As stated above the appellant claims that the foregoing shows both a gift and a trust. The respondents, on the other hand, contend that the evidence is insufficient to show either, and furthermore, if there was any evidence in the record on which the trial court could base an inference in favor of the respondents and against the appellant, then, and in that event, the record presents a conflict of evidence and under well-settled rules this court should affirm the judgment. Taking up the latter part of the contention of the respondents, the record discloses that the decedent made a will; that in the will he recited that he had previously made certain gifts to certain members of his family; that in the will he made a bequest to the appellant; that in the will he made no mention of the fact that he had

made any gift to, or that he had created any trust in favor of, the appellant. On these facts the respondents contend that the trial court might infer that the decedent had not made the gift and had not created the trust. There was nothing on the face of the will, or the codicils thereto, from which it may be inferred that in any one of those documents, or all of them, the decedent had recited every gift which he had made to every one or all of the persons therein named. We are unable to sustain the contention that the inference claimed creates a conflict in the evidence. (*Maupin* v. *Solomon*, 41 Cal. App. 323–325 [183 Pac. 198].) The case entitled *County of Sonoma* v. *Stofen*, 125 Cal. 32 [57 Pac. 681], is inapplicable. On the other hand, the case is far stronger in its facts than were the cases entitled *Field* v. *Shorb*, 99 Cal. 661, 664, 665 [34 Pac. 504], *Bauer* v. *State*, 144 Cal. 740, 745 [78 Pac. 280], and *Hynes* v. *White*, 47 Cal. App. 549 [190 Pac. 836], each of which is opposed to respondents' contention. In the instant case there were the two witnesses, Mrs. Daly and Mr. McArthur, who testified positively, and to the same effect, to the facts which proved the appellant's case. The testimony of neither individual was broken down in the least by the cross-examination.

[1] The evidence introduced clearly proved a trust in favor of the appellant. (*Booth* v. *Oakland Bank of Savings*, 122 Cal. 19 [54 Pac. 370]; *Bell* v. *Moloney*, 175 Cal. 366 [165 Pac. 917].)

[2] Furthermore, as stated in *Bell* v. *Moloney, supra*, "there was also abundant evidence to support the finding of a valid gift *inter vivos.*"

In her cross-complaint on which she went to trial, the appellant alleged a trust payable to her "in case of the death of said John D. Daly." After the evidence was all in, by permission of court, she filed an amended cross-complaint. In that pleading she repeated the limitation as to when the trust was payable and she inserted for the first time the allegations concerning a gift. An examination of the evidence above set forth discloses no limitation to the effect that the money was payable only "in case of the death of said John D. Daly."

The judgment is reversed and the cause is remanded for a new trial, with directions that the parties may be al-

lowed to amend their pleadings as they may be advised before going to trial.

Nourse, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 8, 1927, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 8, 1927.

Seawell, Acting C. J., and Preston, J., dissented.